EXHIBIT "F"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE | § § | CASE NO. 09-53118 |
| GARY JOEL KATLEMAN | § § | |
| AND | § § | |
| JOEL M. KATLEMAN | § § | CASE NO. 09-53125 |
| | § § | |
| DEBTORS | § | CHAPTER 11 |

## JOINTPLAN OF REORGANIZATION OF GARY JOEL KATLEMAN AND JOEL M. KATLEMAN

By: _____
R. GLEN AYERS
State Bar No. 01467500
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Telephone: (210) 736-6600
ATTORNEYS FOR GARY KATLEMAN

and

_____
WILLIAM BILL KINGMAN
State Bar No. _____
LAW OFFICES OF WILLIAM B. KINGMAN, PC
4040 Broadway, Suite 450
San Antonio, Texas 78209
ATTORNEY FOR JOEL KATLEMAN

# INDEX

ARTICLE I - .................................................................................................Definitions 3

ARTICLE II - Introduction ........................................................................................ 7

ARTICLE III - Classification of Claims and Interests ................................................ 7

ARTICLE IV - General Provisions Applicable to Claims of Creditors ........................ 8

ARTICLE V - Means for Execution of the Plan ...................................................... 12

ARTICLE VI - Modification of the Plan ................................................................... 12

ARTICLE VII - Disputed Claims and Objections to Claims ...................................... 13

ARTICLE VIII - Retention of Jurisdiction .................................................................. 14

ARTICLE IX - Executory Contracts ........................................................................ 16

ARTICLE X - Effect of Confirmation of the Plan .................................................... 16

| | | |
|---|---|---|
| IN RE | § § | CASE NO. 09-53118 |
| GARY JOEL KATLEMAN | § § | |
| AND | § § | |
| JOEL M. KATLEMAN | § § | CASE NO. 09-53125 |
| | § § | |
| DEBTORS | § | CHAPTER 11 |

## OVERVIEW AND IDENTIFICATION OF PROPONENT

Gary Joel Katleman and Joel M. Katleman, the Debtors in Possession (hereinafter referred to as "Debtor" or "Debtors"), hereby submits to their Creditors and other parties in interest, this Plan of Reorganization (hereinafter referred to as "the Plan") pursuant to 11 U.S.C. Section 1121 et seq.

## SUMMARY OF PLAN

The Plan provides for the payment of allowed administrative, priority, secured and unsecured creditors from future income. A more detailed discussion of the Plan and its implementation, together with projections of income and expenses and the time necessary to complete the Plan is found in the Disclosure Statement accompanying the Debtors' Plan of Reorganization. The Plan should be read in conjunction with the Disclosure Statement. Debtor urges all creditors and other parties in interest to consult with legal counsel. The creditors and other parties in interest should not rely on any representations not contained in the Plan and/or Disclosure Statement in making a determination on voting to accept/reject the Plan. A detailed discussion concerning the voting rights of creditors and other parties in interest is contained in the Disclosure Statement.

## ARTICLE I

## DEFINITIONS

Except as otherwise indicated, the terms used in the Plan have the definitions used in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Western District of Texas. In addition, the following terms shall have the following meanings:

1.01 <u>Administrative Claim</u>: Any costs or expenses of administration of the Chapter 11 Case entitled to priority in accordance with the provisions of 11 U.S.C. Section 503(b) and 507(a)(1) of the Bankruptcy Code, to the extent allowed by the Bankruptcy Court, including without limitation, any actual and necessary expenses of preserving the Debtors' estates, any actual and necessary expenses of operating the business of the Debtor, including loans or other advances to the Debtors in Possession, all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court pursuant to 11 U.S.C. Section 330, and any fees or charges assessed against the Debtors' estates under Chapter 123 of Title 28, United States Code.

1.02 <u>Allowed Claim</u>: Any Claim against either Debtor, proof of which was timely and properly filed or, if no Proof of Claim was filed, which has been or hereafter is listed by the Debtor on its schedules as liquidated in amount <u>and</u> not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within thirty (30) days after the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is in favor of a Claimant. Unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Claim" shall not include interest or penalty on such Claim for the period from and after the Petition Date through the confirmation of the Plan of Reorganization.

1.03 <u>Bankruptcy Code</u>: The Bankruptcy Reform Act of 1978, as Amended, and set forth in Section 101 <u>et seq.</u> of Title 11, United States Code.

1.04 <u>Bankruptcy Court</u>: The United States Bankruptcy Court for the Western District of Texas, San Antonio Division, or such other Court as may have jurisdiction over the Chapter 11 Case.

1.05 <u>Bankruptcy Rules</u>: Shall mean the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. Section 2075 (1978), applicable to the captioned Chapter 11 reorganization case.

1.06 <u>Bar Date</u>: The deadline of December 28, 2008, for non-government claims and government claims, established by the Bankruptcy Court as the Bar Date with respect to the Debtor and is the date after which any claims which must be filed will be void and disallowed for purposes of voting and distribution.

1.07 <u>Claim</u>: A right to payment from the Debtor which is evidenced by a timely filed proof of claim or application for payment which is allowed by the Court, or, if a proof of claim is not filed, a right which otherwise appears in the applicable schedules and (1) is not listed as disputed, contingent or unliquidated, or (2) has been resolved by final order of the Court or pursuant to the terms of this Plan.

1.08 <u>Confirmation Date</u>: The date of entry of an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.09 <u>Confirmation Order</u>: Order of the Bankruptcy Court confirming the Plan of Reorganization and approving the transactions contemplated therein.

1.10  Consummation of Plan: Accomplishment of substantially all things contained or provided for in the Plan.

1.11  Contested Claim:  Any Claim as to which the Debtors or other party-in-interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order as of the Confirmation Date.

1.12  Court: The United States Bankruptcy Court for the Western District of Texas, San Antonio Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.13  Creditor: All entities holding claims against the Debtor or its estate for debts, liabilities, demands or claims of any character whatsoever, as defined in Section 101(4) of the Bankruptcy Code.

1.14  Debtor or Debtors: Gary Joel Katleman and/or Joel M. Katleman

1.15  Effective Date:  The last of the following dates:

   a.  The thirtieth (30th) day following the Confirmation Date, or

   b.  As to each claim, the date upon which all Claims in the same class have been allowed and ordered paid by a Final Order of the Court.

1.16  Executory Contract : Any contract or agreement between either Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

1.17  Fee Applications:  Applications of Professional Persons for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

1.18  Filing Date: August 17, 2009, the date when the captioned case was instituted by the Debtor filing its voluntary Petition pursuant to Chapter 11 of the U.S. Bankruptcy Code.

1.19  Final Order: An order of the Court which, not having been reversed, modified or amended and not being stayed and the time to appeal, to seek review, certiorari or rehearing having expired, and no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.20  Secured Governmental Claim: Any claim for taxes which is secured by a lien upon property under Texas state law or a federal tax claim which is secured by a Notice of Federal Tax Lien.

1.21  Insiders: Persons affiliated with or related to either Debtor -- in particular, the Debtors' shareholders and officers

1.22   Lease: Any Lease of real or personal property which has not terminated according to its own terms prior to the Effective Date or which was not otherwise terminated prior to the Petition Date. Such leases are deemed to be assumed as a part of the confirmation process.

1.23   Order Confirming Plan: The Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to confirmation.

1.24   Plan: This Joint Plan of Reorganization in its present form or as it may be amended, supplemented or modified from time to time.

1.25   Plan Proponent: The Debtors are joint proponents of the Plan.

1.26   Priority Claim: Any Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Secured or Unsecured Tax Claim.

1.27   Professional Persons: Persons retained to be compensated pursuant to Section 327, 328, 330, 503(b) and/or 1103 of the Bankruptcy Code.

1.28   Property: All property of the estate of either Debtor as defined in Section 541 of the Bankruptcy Code.

1.29   Pro Rata Share: The amount which is the result of multiplying the amount of assets available to a named class of Creditors by that fraction in which the numerator is the allowed amount of a particular Claim in the named class and the denominator is the total of the allowed amounts of all the Claims of the named class.

1.30   Revested Debtor: The Debtors, Gary Joel Katleman and Joel M. Katleman, and as revested pursuant to the Plan with their rights and interests provided in this Plan upon the Confirmation Date. This Plan provides that the Revested Debtor shall own, free from any rights of the Creditors under this Plan, except as specifically provided to the contrary, all property rights which are Property of the Estate. However, should this case be converted to a Chapter 7 case in the future, the property remains property of the estate.

1.31   Schedules: The Schedules and Statement of Financial Affairs filed by either Debtor pursuant to the Bankruptcy Code, as amended from time to time.

1.32   Secured Claim: The Claim of any Creditor of the Debtors who holds a lien, security interest or other security, as that term is defined in Section 101(41) of the Bankruptcy Code, which has been properly perfected as required by law and to the extent of the value of the collateral impressed by the lien, security interest or other security, as determined in accordance with Section 506 of the Bankruptcy Code.

1.33   Tax Claim: Any Claim of any Person that is entitled to priority treatment and payment under 11 U.S.C. Section 507(a).

1.34 <u>Unimpaired Claim</u>: The Claims that are not impaired under this Plan in accordance with 11 U.S.C. Section 1124.

1.35 <u>Unsecured Claims</u>:

a. The portion of the Claim of any Creditor holding a Secured Claim as to which treatment as an unsecured claim is required or permitted by the provisions of Section 506(a) of the Bankruptcy Code;

b. Any and all other Claims not otherwise provided for in the Plan.

A term in this Plan not otherwise defined herein but used in the Bankruptcy Code shall have the definition assigned to such term in the Bankruptcy Code.

## ARTICLE II

## INTRODUCTION

2.1 On August 17, 2009, Gary Joel Katleman and Joel M. Katleman (the "Debtor") filed separate voluntary Petitions for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, and since such date each Debtor has remained in possession and control of its estate and operated its business as Debtor in Possession.

2.2 The Plan proposes to pay Creditors from the present value of the non-exempt assets of each debtor in satisfaction of the allowed Claims. The allowed Claims of administrative and priority creditors will be paid in full, as will a small convenience class of unsecured creditors. Secured creditors will be paid under the present terms of the obligations owed to those secured creditors. The large unsecured and unsecured but contingent claims – Classes 4, 5 and 8 -- will be paid as described in this Plan. The Plan dedicates the value of the non-exempt assets of each of the Debtors to the repayment of those three Classes. All allowed claims, including administrative, priority, secured and unsecured, will be paid pursuant to the terms contained herein from the Effective Date. The payments to some secured creditors will extend past the term of the Plan.

2.3 Funds will be disbursed to all classes of Creditors at the time specified on or after the Effective Date to pay the administrative, priority, secured and unsecured Claims in accordance with the provisions for their payment as set forth in this Plan.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

The claims and interests against the Debtor are classified as follows:

## Administrative Claim

Class 1A and 1B Claims: The Class 1 claims consist of the professionals who have provided services to the Debtor during the pendency of this Chapter 11 case. Class 1 does not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a). The estimated amounts of such claims are as follows, divided into Classes 1A, for Gary Katleman, and 1B, for Joel Katleman:

| Class 1A | |
|---|---|
| Langley & Banack, Inc. (Attorneys for Gary Katleman) | $ 20,000.00 |
| O'Connor & Assoc's (Appraisers) (1/2 of the fee) | $ 27,000.00 |
| William B. Kingman (Attorney for Joel Katleman) | $35,000.00 |
| O'Connor & Assoc's (Appraisers) (1/2 of the fee) | $ 27,000.00 |
| Total Estimated Professional Claims | $109,000.00 |

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtor's Chapter 11 bankruptcy case are also included as Class 1 claims. These claims will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtor are moderate for a case of this size.

Langley & Banack holds a retainer balance in excess of the amount of the attorneys' fees and expenses currently accrued. Therefore, the Langley & Banack distribution under the Plan set out above is the estimate of the amount necessary to conclude the case.

Other than Attorneys and Appraisers, there are no known accrued and unpaid administrative expenses.

Class 1A and 1B Claims: These will be paid as allowed by the Court from the retainers received or when funded by income and allowed by the Court.

These claims are not impaired and will not vote on the Plan.

## Secured Claims

Class 2A and 2B Claims: The Class 2 claims consist of the secured claims of the taxing entities located in Bexar County. These are secured by statutory first liens. The secured Class 2A claim on the homestead of Gary Katleman is $15,000. The Class 2 B claim on real property owned by Joel Katleman in San Antonio is approximately $8,100.00_. These claims will be paid in the ordinary course. These obligations will be assumed. The taxing authorities will retain their liens.

The Class 2A and 2B claims are not impaired the Plan of Reorganization and will not vote on the Plan.

Class 3A and 3B Claims: The Class 3A claim consists of the secured claim of Bank of America, which holds a first lien upon Gary Katleman's exempt homestead. The amount of the debt is $420,000 and is fully secured. The secured creditor will retain its lien, the obligation will be assumed and reaffirmed under the Plan, and this debt will be paid in the ordinary course in payments of 4,200 per month. Insurance and other covenants will be honored.

The class 3B claim consists of the secured obligation of Joel M. Katleman to BAC Home Loans Serving who holds a first lien real property located at 24611 Fairway Springs in San Antonio, Texas and is fully secured. The secured creditor will retain its lien, the obligation will be assumed and reaffirmed under the Plan, and this debt will be paid in the ordinary course by Joel Pollack. Insurance and other covenants will be honored. If Joel Pollack defaults, then Joel Katleman will assume the obligations.

The Class 3A and 3B claims are not impaired under the Plan and will not vote on the Plan.

## Priority Unsecured Claim

There are no known priority claims other than taxes owed to the IRS for the year 2009; those taxes will be paid in the ordinary course as they come due and are not treated under the Plan.

## Unsecured Claims

Class 4 Claims: The Class 4 unsecured claims of EF Funding against both Debtors. The obligation under this guaranty, according to the EF Funding Proof of Claim, is $9.357 million.

This claim is not secured. The debt is joint and several. Joel Pollack is jointly liable with the Debtors up to an amount of $8.5 million (plus accrued judgment interest in an unknown amount). Mr. Pollack is not expected to contribute significantly to this obligation.

The Debtors intend to satisfy this claim from income until the total of the present value of the Debtors assets have been paid over to its creditors, on a pro-rata basis. EF Funding, which is entitled to receive the present value of its claim, will not receive interest on any unpaid balance because under §1129(b)(2)(B)(ii) and § 1115 the Debtors will each pay out to creditors on a ratable basis the full value of all assets owned by each except for exempt property based upon the values of the Debtors' assets as of the date of Confirmation.

Exhibit E attached shows the income from the Debtors' assets and the application to the debt of EF Funding. The payments to EF Funding will continue for 5 years at which time the Debtors will pay the balance due and owing by a financing or sale of assets in order to fund a balloon payment.

Interest at the federal judgment rate will be paid on the value of distributable assets in order to pay this and other unsecured creditors the present value of the Debtors' distributable estates. The actual claims of the unsecured creditors will not receive interest.

The Class 4 claim is impaired under the Debtors' Plan of Reorganization and will vote on the Plan.

Class 5 Claims: The Class 5 claims of the unsecured, contingent guaranty claims of Falcon Bank. The Falcon Bank loan is not presently in default, but both Debtors will be required to continue to fund the development of Dominion Village. The funding by the Debtors is limited to the ratable share of the assets of the two Debtors which would be allocated to the full amount of the debt of Falcon were there a default, so that the ratable share of the obligations of the two Debtors to EF Funding and other unsecured creditors is not diluted. The Debtors estimate if there were a default and foreclosure by Falcon Bank, they would be liable for not less than $10.0 million under the terms of the guaranty. Again, Joel Pollack is not able, in the Debtors' joint opinion, to contribute to any deficiency due to Falcon Bank.

The Debtors intend to satisfy any current claim to Falcon Bank by continuing to fund the development of Dominion Village and by maintaining the Falcon Bank obligation of almost $17,000,000 in a "current" status.

Further, as additional collateral to support its guarantees, Falcon Bank will, pursuant to the Plan, receive a Plan-created lien against the non-exempt personal property assets of Gary Katleman and the non-exempt personal property assets of Joel M. Katleman.

Class 5 is impaired under the Plan and will vote on the Plan.

Class 6 Claims: The Class 6 claims consist of the unsecured obligations owed to the other general unsecured creditors of Gary Katleman, which total approximately $10,000, and does not include sums owed to the insider Independence Village (see Class 8). The claims will be paid in full within 90 days of the date of Confirmation as a "convenience class."

Class 6 is impaired under the Plan will vote on the Plan.

Class 7 Claims: The Class 7 claims consist of the unsecured obligations owed to the general unsecured creditors of Joel Katleman, which, at most, total approximately $20,298.00, and does not include sums owed to the insider Independence Village (see Class 8). The claims will be paid in full within 90 days of the date of Confirmation as a "convenience class."

Class 7 is impaired under the Plan and will vote on the Plan.

Class 8 Claims: The Class 8 claims consist of the unsecured claim held by an insider, Independence Village. The Debtors jointly owe Independence Village about $1.7 million representing advances and other claims accrued over the last several years. This claim is by definition a claim of an insider. The claim will be paid ratably with the Claims of

EF Funding and Falcon Bank. While the claim is impaired, and while Independence Village may vote to accept or reject the Plan, a vote in favor of the Plan by Class 8 will not satisfy the requirements of the Bankruptcy Code that at least one creditor class that is impaired must accept the Plan in order for Confirmation to occur.

The Class 8 claims are deemed to be impaired under the Plan and will vote on the Plan.

<u>Class 9 Interests</u>: Class 11 claims consist of the interests in each Debtor held by each Debtor. The interests are unimpaired; each Debtor will retain their ownership interests in all property, including exempt property.

Class 9 interests are deemed unimpaired under the Plan and will not vote on the Plan.

## ARTICLE IV

### A. GENERAL PROVISIONS APPLICABLE TO ALL CLAIMS OF CREDITORS

1.  Pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, the Court shall determine the value of any claim secured by a lien on property in which the estate has an interest at the confirmation hearing set on the Plan or prior to that time pursuant to a Motion filed by the Debtor to value the property pursuant to 11 U.S.C. Section 506. The claim shall be secured to the extent of the value of the collateral as determined by the Court, and unsecured for the balance, if any. For purposes of voting on the Plan of Reorganization, the Court shall estimate any claim when requested to do so at the hearing on the confirmation if a valuation hearing has not already been held.

2.  The Plan provisions which will apply to each class upon confirmation of the Plan need not be further reduced to writing and executed by the parties in order to be binding. However, parties wishing to reduce the provisions of this Plan to writing shall tender all documents effectuating the terms of this Plan to the attorney for the Debtor for approval prior to their execution. Unless otherwise agreed by the parties, the terms of existing written instruments shall control except where in conflict with the provisions of this Plan; where new instruments may be required, they shall conform to the official State Bar of Texas forms where such forms exist.

3.  Payments under this Plan shall be due on the first (1st) of each calendar month unless otherwise specifically provided in the treatment of a particular class. The first payment shall commence on the payment date of the month next following the Effective Date of the Plan.

### B. PROVISION FOR TREATMENT OF SPECIFIC CLASSES

<u>Class 1A and 1B Claims</u>: The Class 1 claims consist of ordinary course post-petition creditors and of the professionals who have provided services to the Debtor during the pendency of this Chapter 11 case. These claimants and the amounts of their claims are listed above.

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy case are also included as Class 1A and 1B claims. These claims will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate.

As noted above, these claims are not impaired under the Plan and will be paid as allowed by the Court from income or from retainers.

<u>Class 2A and 2B Claims</u>: The Class 2 claims consist of the secured claims of the property taxes due various Bexar county entities and will be paid in the ordinary course. All liens will be retained to secure these claims.

<u>Class 3A and 3B Claims</u>: All Class 3 claims will be paid in the ordinary course from the income of the Debtors as provided for in the notes securing the debt; these claims will be reaffirmed by the Debtors. No cure is required. All liens will be retained by the lenders. These claims are unimpaired. These claims will not be paid in full during the life of this Plan.

There are no other special provisions for the treatment of the remaining classes, 4-9.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

5.01    On or after the Effective Date, and to the extent the claim or claims of the Class 1 through 9 creditors then remain unpaid, such claim or claims of those creditors shall then be paid in accordance with the terms of this Plan. The payments to some creditors may extend past the term of the Plan; the real estate loans described at Class 3A and 3B will be paid off over approximately the next twenty (20) years.

5.02    On or after the Effective Date, and to the extent the claim or claims of the Class 2 and 3 creditors then remain unpaid, such claim or claims of said Classes 2 and 3 shall retain the lien or liens and security interests securing the payment of such claim or claims, or property interests, until said claim or claims are paid in full and in accordance with the terms of Section IV herein, unless and except to the extent that collateral is transferred to a secured creditor in satisfaction of its claim or claims.

5.03    Post-confirmation, the Revested Debtor is authorized to sell or pledge all or a part of its non-exempt assets (at their market values) so long as all of the allowed claims under the Plan are paid in ratably or in full, or continue to be paid as provided for in the

Plan. The lien claims of creditors will automatically attach to any sales proceeds in accordance with their existing lien positions. Payments will be in order of priority.

5.04 Property or funds remaining in the estates of the Debtors prior to and after all classes of claims have been paid pursuant to the terms of the Plan of Reorganization shall remain and be retained as the property of the Debtors as provided by 11 U.S.C. §1115.

## ARTICLE VI.

## MODIFICATION OF THE PLAN

1. The Debtors may jointly modify this Plan at any time prior to confirmation so long as the modification complies with the requirements of Section 1122 and 1123 of the Code. Upon the filing of any such modification with the Court, the Plan as modified becomes the Plan.

2. The Debtors may jointly modify this Plan any time after confirmation upon compliance with Section 1127 of the Code. Notice shall be deemed sufficient if given to each creditor with an unpaid allowed claim in this case. If in the opinion of the court the modification does not materially and adversely affect the interest of the creditors, the Court may modify the Plan without notice to creditors.

## ARTICLE VII.

## DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

1. The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature, description whatsoever of or against the Debtors or the Debtors in Possession and any of assets or properties. Except as otherwise provided herein or in the Confirmation Order, upon the Confirmation Date all Claims existing against the Debtors or Debtors in Possession shall be, and are deemed to be exchanged, satisfied, discharged and released in full and all holders of Claims shall be precluded from asserting against the Debtors or their assets or properties any further Claim based upon any act or admission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

2. The Confirmation Order shall be a judicial determination discharging the Debtors, except as provided for in this Plan, from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under 11 U.S.C. Section 502 as if such Claim had arisen before the Confirmation Date, whether or not a Proof of Claim based on any such debt or liability is filed under 11 U.S.C. Section 501 and whether or not a Claim based on such Debtor liability is allowed under 11 U.S.C. Section 502. The Debtor will file any claims objections on or before thirty (30) days from the Plan's Effective Date. At present, the Debtors are attempting to resolve any disputes regarding claims with the particular creditor. The Debtor is hopeful that such negotiations will lead to an

amicable resolution of any claims disputes; no guarantee that the negotiations will lead to a resolution of any disputes.

Upon the Debtors successfully completing the terms of the confirmed Chapter 11 Joint Plan of Reorganization, the Debtors will have no further liability to any creditor of the Debtors, including the Internal Revenue Service, for any and all debts and liabilities included herein (complete discharge of all pre-petition liability and obligations).

3. Each holder of an instrument evidencing a Claim shall be provided for in this Plan. No distribution under this Plan shall be made to or on behalf of any holder of such Claim unless or until such certificate or instrument is received or the non-availability of such certificate or instrument is established to the satisfaction of the Debtor or any agent of Debtor. Any such holder who fails to surrender such certificate or instrument or satisfactorily explain its non-availability within one (1) year of the Confirmation Date shall be deemed to have no further claim or interest.

4. The Claims of Class 1, 2 and 3 creditors are unimpaired by this Plan in accordance with 11 U.S.C. Section 1124.

5. By virtue of their status as "unimpaired" Classes of Claims, Classes 1, and 3 are deemed to have accepted the Plan pursuant to 11 U.S.C. Section 1126(f) and there is no requirement to solicit the votes of the members of those classes with respect to this Plan. The Classes of Interests, Classified as Classes 9A and 9B, are also unimpaired.

6. The Claims of all other Classes are impaired by this Plan and, accordingly, are entitled to vote to accept or reject this Plan.

7. A Class will be held to have accepted this Plan, if the Plan is accepted by at least two-thirds (2/3's) in amount and more than one-half (1/2) in number of the holders of Claims or Interests of each Class that have _voted_ to accept or reject this Plan.

8. In the event that any class entitled to vote on the Plan fails to accept the Plan by the requisite majorities in accordance with 11 U.S.C. Section 1126, the Debtors request that the Bankruptcy Court confirm the Plan in accordance with 11 U.S.C. Section 1129(b) (cram down).

## ARTICLE VIII.

## RETENTION OF JURISDICTION

8.1 The Court shall retain jurisdiction of this case after the Confirmation Date until all payments and distributions called for under the Plan have been made and until entry of a final decree, in respect of the following matters:

a. To estimate, classify, allow or disallow claims and direct distributions of funds under the Plan and to hear and determine any controversies pertaining thereto.

    b. To hear and determine any and all motions, applications, complaints, adversary proceedings and other matters arising out of or related to the Plan and this case.

    c. To sign and implement such orders as it may determine to be appropriate in the event the Order Confirming Plan is for any reason stayed, reversed, revoked or vacated.

    d. To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in condition with any contingent or unliquidated claim.

    e. To adjudicate all claims to any lien on any property for the Debtor or any proceeds thereof.

    f. To adjudicate all claims or controversies arising during the pendency of the Chapter 11 case.

    g. To recover all assets and property of the Debtor, wherever located, to the extent necessary for the consummation of this Plan.

    h. To hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code. Debtor, pursuant to this Plan of Reorganization, hereby reserves the right to review and object, if necessary, to the claims of federal and local taxing authorities for tax, penalty and interest assessed (whether paid or outstanding) on income and/or real and personal property of the Debtors, both pre and post-petition.

    i. To allow professional fees and reimbursement of the expenses of professionals employed during this case and prior to the Confirmation of the Plan.

  8.2 If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, this Article shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matters.

  8.3 The Debtors will file Applications for Entry of Final Decree within one hundred eighty (180) days from the confirmation of the Debtors' Plan unless such deadline is extended by the Court pursuant to a timely Motion requesting such extension.

  8.4 U.S. Trustee Fees - The Debtors will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of the Plan. After confirmation, the Reorganized Debtor will file with the court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed. 28 U.S.C. Section 1930(a)(6).

  8.5 Default - Upon default by the Reorganized Debtors, creditors (other than the Internal Revenue Service) are required to provide written notice of such Default to the

Reorganized Debtor Gary Joel Katleman and his counsel, R. Glen Ayers of Langley & Banack, Inc., by certified mail, return receipt requested, and by regular first class mail, and the Reorganized Debtor shall have thirty (30) days from the date of the notice to cure the default. The same notice shall be provided to Joel M. Katleman and his counsel, William B. Kingman. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Reorganized Debtors their counsel. If the Reorganized Debtors fail to cure within the thirty (30) day cure period provided herein, creditors affected by the default shall be allowed to foreclose upon any collateral without further notice of hearing before the Court or, in the case of unsecured creditors, may move to have the case converted to a case under Chapter 7.

  8.6  The United States (Internal Revenue Service) requests the following default language:

  (a)  that the debt owed by a Debtor to the IRS is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if a Debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; and

  (b)  a failure by a Debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the 15th day of each month; if there is a default to IRS, IRS must send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the Debtor can receive up to five (5) notices of default from the IRS; however, the fifth default cannot be cured, and the IRS may accelerate its allowed claim(s), past or future, and declare the outstanding amount of such claim(s) to be immediately due and owing, and pursue any and all available state and federal rights and remedies.

  (c)  The IRS is bound by the provisions of the confirmed Plan and is barred under Section 1141 from taking any collection action against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. Sec. 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS has been made; or (2) 30 days after the date of a demand letter for which a Debtor failed to cure the default.

## ARTICLE IX.

## EXECUTORY CONTRACTS

  9.01  All executory contracts of each Debtor not expressly rejected in writing on or before the Confirmation Date are deemed to be assumed. Rejection is accomplished by

filing an Application therefore with the Court together with proof of service of the Application to reject upon all parties affected thereby although the Court's approval of the rejection will not take place until the hearing on Application some time later.

If no agreement has been reached regarding the cure of a lease arrearage (on a lease being assumed), any such pre-petition lease arrearages will be added to the end of the lease term. Should the Debtor default in the lease cure(s), the terms of the applicable lease are controlling.

9.02 All parties to a rejected contract (other than a contract previously rejected by Motion and Order approved by this Court) will have thirty (30) days from and after the date that the order approving rejection becomes a Final Order within which to file a Proof of Claim for damages, if any, resulting from such rejection. The failure to file such Proof of Claim within that period will forever bar the party affected by the rejection from participating in any distribution under the Plan or recovering any payment on any claim on account of such rejection.

## ARTICLE X

### EFFECT OF CONFIRMATION OF PLAN

The provisions of the Plan once confirmed are binding upon each Debtor and all creditors. The confirmation of the Plan vests all property of the estate in the Debtors except as otherwise provided in the Plan. The property to be revested includes causes of action. The Debtors' property is revested free and clear of all claims and interests except as otherwise provided in the Plan. The Debtors are discharged from any debt which arose prior to confirmation, whether as maker or guarantor, except as provided for in the Plan, Order Confirming Plan or the Bankruptcy Code, upon completing the terms and payments of the Plan of Reorganization.

Date: March 31, 2009

BY:_____
Gary Joel Katleman

BY:_____
Joel M. Katleman

OF COUNSEL:

BY: _____
R. GLEN AYERS
State Bar No. 01467500
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Telephone: (210) 736-6600
ATTORNEY FOR GARY JOEL KATLEMAN

BY: _____
William Bill Kingman
State Bar No. _11476200_
LAW OFFICES OF WILLIAM B. KINGMAN, PC
4040 Broadway, Suite 450
San Antonio, Texas 78209
ATTORNEY FOR JOEL KATLEMAN